**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
*dalekgalipo@yahoo.com*
Marcel F. Sincich, Esq. (SBN 319508)
*msincich@galipolaw.com*
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET LEEDS, individually and as successor-in-interest to DECEDENT, DERREK LEEDS, <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF MARIN; JORGE YAUGER; BRIAN JOHNSON; DUSTIN YEAGER; JULIET DE LA CRUZ; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 3:25-cv-04227 <br><br> **COMPLAINT FOR DAMAGES** <br><br> <u>Pursuant to 42 U.S.C. §1983, Federal Law</u> <br> 1. Denial of Familial Relationship, Due Process – Violation of the Fourteenth Amendment <br> 2. Failure to Protect, Conditions of Confinement, Denial of Medical Care – Violation of the Fourteenth <br> 3. Supervisor Liability <br> 4. Municipal Liability – Failure to Train <br> 5. Municipal Liability – Ratification <br> 6. Municipal Liability – Unconstitutional Custom, Practice, or Policy <br> 7. Americans with Disabilities Act – Reasonable Accommodation <br><br> <u>Pursuant to State Law</u> <br> 8. Negligence <br> 9. Failure to Summon Medical Assistance (Govt. Code §845.6) <br> 10. Violation of Bane Act (Civ. Code §52.1) <br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

Comes now, Plaintiff JANET LEEDS, individually and as successor-in-interest to DECEDENT, DERREK LEEDS for her complaint against Defendants COUNTY OF MARIN; DEPUTY JORGE YAUGER; DEPUTY BRIAN JOHNSON; DETENTION NURSE DUSTIN YEAGER; DETENTION NURSE JULIET DE LA CRUZ; and DOES 1 through 10, inclusive, and hereby alleges as follows:

**INTRODUCTION**

1.    This civil rights action arises out of the May 30, 2024, failure to care for and protect DECEDENT DERREK LEEDS by Defendants COUNTY OF MARIN; DEPUTIES JORGE YAUGER and BRIAN JOHNSON; DETENTION RNs DUSTIN YEAGER and JULIET DE LA CRUZ; and DOES 1 through 10, inclusive, when they collectively knew or should have known of, but instead ignored DECEDENT LEEDS' serious medical condition, a dangerous and life-threatening situation exposing him to a substantial risk of harm and death. Plaintiff JANET LEEDS seeks compensatory damages, punitive damages, attorneys' fees, and costs from Defendants for violating various rights guaranteed to DECEDENT and Plaintiff by the United States Constitution and the California Constitution, and under California Law. Defendants are liable under 42 U.S.C. §1983 for violations of the Fourteenth Amendment to the United States Constitution. Defendants are also liable under state law pursuant to Cal. Govt. Code §§815.2(a), 820(a), 845.6, and Cal. Civ. Code §52.1.

**JURISDICTION AND VENUE**

2.    This civil action is brought for the redress of alleged deprivations of rights under the laws of the State of California and of constitutional rights protected by 42 U.S.C. §§1983, 1985, 1986, 1988, and the Fourteenth Amendment to the United States Constitution, and pursuant to the Americans with Disabilities Act 42 U.S.C. §12101 et seq. Jurisdiction is founded on 28 U.S.C. §§1331 and 1343.

3.     Venue is proper in this Court under 28 U.S.C. §1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of Marin, California.

## PARTIES

4.     DECEDENT DERREK LEEDS ("DECEDENT") is the 43-year-old decedent in this action. DECEDENT died on May 30, 2024, at approximately 2:24 a.m., while in the custody and under the protection of the Marin County Sheriff's Department ("MCSD"), and its employees and contractors at the Marin County Jail ("MCJ"), in the County of Marin, California.

5.     At all relevant times, Plaintiff JANET LEEDS ("PLAINTIFF") is and was an individual residing in the County of Alameda, California. PLAINTIFF is the mother of DECEDENT and sues in her individual capacity for wrongful death under state and federal law, and for survival damages as DECEDENT's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60.

6.     Defendant COUNTY OF MARIN ("COUNTY") was and is a public entity organized and existing under and by virtue of the laws of the State of California. MCSD was and is a subdivision of Defendant COUNTY. Defendant COUNTY is a chartered political subdivision of the State of California that is within this judicial district with the capacity to be sued. Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including MCSD and its employees, contractors, and agents. At all relevant times, Defendant COUNTY was and is responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the MCSD complied with the law of the United States and the State of California. Defendant COUNTY was and is the employer of Defendant DOES 1-8, inclusive.

7.     In his individual capacity, at all relevant times, Defendant Deputy JORGE YAUGER ("YAUGER") was a duly appointed employee and agent of

Defendant COUNTY, subject to the oversight and supervision of Defendant COUNTY and its elected and non-elected officials and supervisors. At all relevant times, Defendant YAUGER acted under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, practices and usages of the State of California and COUNTY. At all relevant times, Defendant YAUGER acted within the course and scope of his employment with COUNTY, including concerning the means by which the life and safety of inmates were secured, the classification of inmates, the placement of an inmate in areas within MCJ supposedly appropriate to safeguard the life and safety of inmates, the manner in which an inmate's life and safety is monitored, evaluated, protected and treated, the safeguards and protocols necessary to prevent unnecessary death of inmates, the actions required when an inmate is experiencing a medical condition or crisis while incarcerated, and what methods of surveillance were to be used within MCJ to ensure immediate response to prevent or lessen harm, injury, or death occurring at MCJ. Defendant YAUGER made an intentional decision or decisions regarding the conditions of confinement, including the access to adequate medical care to DECEDENT by the classification, protection, monitoring, and response to DECEDENT during the incident from which this action arises, which caused DECEDENT'S and PLAINTIFF'S harms as alleged herein. Defendant YAUGER caused various injuries alleged herein by integrally participating in or failing to intervene in the incident as described herein, and by directly engaging in other acts and/or omissions. Defendant YAUGER was on duty and charged with the protection of DECEDENT LEEDS on or about May 26 to May 30, 2024, at MCJ. On information and belief, Defendant YAUGER is and was at all relevant times a resident of this judicial district.

8.     In his individual capacity, at all relevant times, Defendant Deputy BRIAN JOHNSON ("JOHNSON") was a duly appointed employee and agent of Defendant COUNTY, subject to the oversight and supervision of Defendant COUNTY and its elected and non-elected officials and supervisors. At all relevant

times, Defendant JOHNSON acted under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, practices and usages of the State of California and COUNTY. At all relevant times, Defendant JOHNSON acted within the course and scope of his employment with COUNTY, including concerning the means by which the life and safety of inmates were secured, the classification of inmates, the placement of an inmate in areas within MCJ supposedly appropriate to safeguard the life and safety of inmates, the manner in which an inmate's life and safety is monitored, evaluated, protected and treated, the safeguards and protocols necessary to prevent unnecessary death of inmates, the actions required when an inmate is experiencing a medical condition or crisis while incarcerated, and what methods of surveillance were to be used within MCJ to ensure immediate response to prevent or lessen harm, injury, or death occurring at MCJ. Defendant JOHNSON made an intentional decision or decisions regarding the conditions of confinement including the access to adequate medical care to DECEDENT by the classification, protection, monitoring, and response to DECEDENT during the incident from which this action arises, which caused DECEDENT'S and PLAINTIFF'S harms as alleged herein. Defendant JOHNSON caused various injuries alleged herein by integrally participating in or failing to intervene in the incident as described herein, and by directly engaging in other acts and/or omissions. Defendant JOHNSON was on duty and charged with the protection of DECEDENT LEEDS on or about May 26 to May 30, 2024, at MCJ. On information and belief, Defendant JOHNSON is and was at all relevant times a resident of this judicial district.

9.     In his individual capacity, at all relevant times, Detention R.N. DUSTIN YEAGER ("YEAGER") was a duly appointed employee and agent of Defendant COUNTY, subject to the oversight and supervision of Defendant COUNTY and its elected and non-elected officials and supervisors. At all relevant times, Defendant YEAGER acted under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, practices and usages of the State of

COMPLAINT FOR DAMAGES

California and COUNTY. At all relevant times, Defendant YEAGER acted under color of law, and within the course and scope of his employment with Defendants, including concerning: the means by which the life and safety of inmates were protected; the intake, classification, and criteria for placement of inmates; the housing of inmates appropriate to safeguard the life and safety of inmates; the safeguards in place to prevent inmates from harm concerning medical conditions; the actions taken when an inmate has a medical condition or crisis while in custody; and the methods of medical care and treatment to be used within MCJ to ensure the care and protection of inmates. Defendant YEAGER was charged with the medical monitoring, evaluation, and treatment of DECEDENT while at MCJ. Defendant YEAGER caused various injuries herein by integrally participating in or failing to intervene in the incident as described herein, and by engaging in other acts and/or omissions. Upon information and belief, Defendant YEAGER was at all relevant times a resident of this judicial district.

10.    In her individual capacity, at all relevant times, Detention R.N. JULIET DELA CRUZ ("DE LA CRUZ") was a duly appointed employee and agent of Defendant COUNTY, subject to the oversight and supervision of Defendant COUNTY and its elected and non-elected officials and supervisors. At all relevant times, Defendant DE LA CRUZ acted under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, practices and usages of the State of California and COUNTY. At all relevant times, Defendant DE LA CRUZ acted under color of law, and within the course and scope of her employment with Defendants, including concerning: the means by which the life and safety of inmates were protected; the intake, classification, and criteria for placement of inmates; the housing of inmates appropriate to safeguard the life and safety of inmates; the safeguards in place to prevent inmates from harm concerning medical conditions; the actions taken when an inmate has a medical condition or crisis while in custody; and the methods of medical care and treatment to be used within MCJ to ensure the care

and protection of inmates. Defendant DE LA CRUZ was charged with the medical monitoring, evaluation, and treatment of DECEDENT while at MCJ. Defendant DE LA CRUZ caused various injuries herein by integrally participating in or failing to intervene in the incident as described herein, and by engaging in other acts and/or omissions. Upon information and belief, Defendant DE LA CRUZ was at all relevant times residents of this judicial district.

11.    At all relevant times, Defendants DOES 1-4, inclusive, ("DEPUTY DOES") were and are duly appointed MCSD Deputies, Sergeants, Officers, Supervisors, Counselors and/or employees and agents of Defendant COUNTY and MCSD, subject to the oversight and supervision of Defendant COUNTY and MCSD's elected and non-elected officials. At all relevant times, Defendants DEPUTY DOES acted under color of law, and within the course and scope of their employment with Defendant COUNTY and MCSD, including concerning: the means by which the life and safety of inmates were secured; the intake, classification, and the housing of inmates appropriate to safeguard the life and safety of inmates; the safeguards in place to protect inmates; the reporting on an inmate's condition; the actions taken when an inmate is experiencing a medical condition or crisis while in custody; the proper care, treatment, accommodation, and protection of inmates; and the methods of surveillance and cell checks to be used within each facility to ensure immediate response to prevent or lessen harm occurring in the facility. Defendants DEPUTY DOES caused DECEDENT'S and PLAINTIFF'S various injuries alleged herein by integrally participating or failing to intervene in the incident as described herein, and by directly engaging in other acts and/or omissions. Upon information and belief, Defendants DEPUTY DOES were and are at all relevant times residents of this judicial district.

12.    At all relevant times, Defendants DOES 5-8, inclusive, ("MEDICAL DOES") were and are duly appointed employees and agents of Defendant COUNTY, subject to the oversight and supervision of Defendant COUNTY'S elected and non-elected officials. At all relevant times, Defendants MEDICAL DOES acted under

color of law, and within the course and scope of their employment with Defendant COUNTY, including concerning: the means by which the life and safety of inmates were secured; the intake, classification, and the housing of inmates appropriate to safeguard the life and safety of inmates; the safeguards in place to protect inmates from harm in the facility; the actions taken when an inmate has a medical condition or crisis while in custody; and the methods of medical care and treatment to be used within MCJ to ensure the care and protection of inmates. Defendants MEDICAL DOES were charged with: the monitoring, evaluation, care, and treatment of DECEDENT; and the documentation of DECEDENT'S condition while at MCJ. Defendants MEDICAL DOES caused DECEDENT'S and PLAINTIFF'S various injuries herein by integrally participating in or failing to intervene in the incident as described herein, and by engaging in other acts and/or omissions. Upon information and belief, Defendants MEDICAL DOES were and are at all relevant times residents of this judicial district.

13.    At all relevant times, Defendants DOES 9-10, inclusive ("SUPERVISOR DOES"), were and are duly appointed COUNTY managerial, supervisorial, and/or policymaking employees of Defendant COUNTY. At all relevant times, Defendants SUPERVISOR DOES acted under color of law and within the course and scope of their employment with Defendant COUNTY and MCSD. Defendants SUPERVISOR DOES caused DECEDENT'S and PLAINTIFF'S various injuries herein by integrally participating in or failing to intervene in the incident as described herein, and by engaging in other acts and/or omissions. Defendants SUPERVISOR DOES were acting with the complete authority of their principal, Defendant COUNTY. Upon information and belief, Defendants SUPERVISOR DOES were and are at all relevant times residents of this judicial district.

14.    PLAINTIFF is ignorant of the true names and capacities of the defendants sued herein as Defendants DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. PLAINTIFF is informed, believes, and alleges,

that each of the fictitiously named Defendant is legally responsible, intentionally, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby legally caused the injuries, damages, and violations and/or deprivation of rights herein alleged. PLAINTIFF will seek leave of Court to amend this Complaint to state the true names and/or capacities of said fictitiously named Defendants when they have been ascertained.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

15.    PLAINTIFF repeats and re-alleges each and every allegation in paragraphs 1 through 14 of this Complaint with the same force and effect as if fully set forth herein.

16.    DECEDENT died while in custody at MCJ under the failed protection and failed care of Defendants when his serious medical condition was untreated and ignored, a substantial risk that the individual Defendants knew or should have known could occur and by their reckless conduct created the danger and allowed it to occur.

17.    The 43-year-old DECEDENT suffered from a serious medical condition, the symptoms of which were obvious, objectively displayed, and known, and for which DECEDENT requested care, which was not given to him and eventually caused his death due to the conditions of his confinement and lack of care.

18.    The individual Defendants should have observed DECEDENT'S signs and symptoms, should have recognized that these signs and symptoms create a substantial likelihood of harm or death to DECEDENT, and should have transported DECEDENT to the hospital so that he would have been properly diagnosed, monitored, treated, and cared for.

19.    The Sonoma County Sheriff's Office Sheriff-Coroner determined that DECEDENT died on May 30, 2024 at 2:42 a.m. DECEDENT was pronounced deceased by paramedic Uriel Guevara. The location of death was 13 Peter Behr Drive, Dan Rafael, CA 94903, at Marin County Jail, B-Pod, Cell 15. DECEDENT'S serious

medical condition was retroperitoneal hematoma (the collection of blood in the abdominal cavity) and hemoperitoneum (bleeding in the abdominal cavity), of which he died as a result of the lack of care thereof.

20.    Upon information and belief, DECEDENT was suffering severe pain from internal bleeding for approximately two days prior to his death. DECEDENT cried out for help numerous times during that time, yet the Defendant Deputies and Nurses ignored DECEDENT'S cries for help, failed to adequately monitor DECEDENT, failed to evaluate DECEDENT, failed to treat DECEDENT, and failed to summon medical care for DECEDENT. DECEDENT screamed at times, "I feel like I'm dying," but Defendants failed to respond. Besides his cries and requests for help, DECEDENT also showed obvious signs of medical distress including vomiting, dry heaving, incontinence, sitting or lying in a buckled over position, and at times was unable to leave his cell.

21.    B-Pod Cell 15 contained a bunk bed, a desk, a chair, and a metal toilet/sink combo unit. The floor of the cell contained vomit on the floor.

22.    DECEDENT was originally found in a partially seated position leaning against his toilet. By the time that medical attention was provided to DECEDENT, his extremities and core were already cold to the touch in what was a warm environment, lividity was faintly present, and he was in the beginning stages of rigor mortis.

23.    DECEDENT had been in custody since early May 2024. He was known to COUNTY and its officials, including Defendants, as a fentanyl user but he was not placed on any withdrawal protocols and was housed in B-Pod, which was a standard housing unit within the facility. DECEDENT was placed in a cell without a cellmate, without a working audio cell emergency button, and without internal video monitoring. Inmates' lives are dependent on the cell-check deputy adequately performing cell checks, reporting information to the appropriate parties, including supervisors and medical staff, and medical staff adequately checking on inmates. Defendants failed to perform these required duties.

24.    Days prior to the day of DECEDENT'S death and leading up to the day of his death, several DEPUTY DOES and MEDICAL DOES were assigned to and had the duty to care for, monitor, protect, evaluate, and treat DECEDENT.

25.    During this timeframe prior to the date of death, the DEPUTY DOES and MEDICAL DOES failed to follow their basic training, failed to follow policy, failed to act reasonably under the circumstances and showed a conscious disregard to the life and safety of DECEDENT.

26.    During this timeframe prior to the date of death, DECEDENT showed obvious outward signs and symptoms of medical distress that any reasonable deputy or medically trained person would know to be a serious medical emergency. Upon information and belief, DECEDENT also asked for help, which was not given to him, not given adequately to him, or completely ignored by the DEPUTY DOES and MEDICAL DOES.

27.    On the day of DECEDENT'S death, Defendant Deputies JOHNSON and YAUGER were correctional officers working the night shift and tasked with the duty of fulfilling corrections duties, such as conducting cell checks and monitoring inmates. Defendants JOHNSON and YAUGER failed to conduct appropriate cell checks and failed to adequately monitor DECEDENT. Defendants JOHNSON and YAUGER failed to timely report DECEDENT'S medical condition and call for his immediate transport to a proper medical facility. Upon information and belief, Defendants JOHNSON and YAUGER knew that DECEDENT was suffering from a serious medical condition based on his obvious symptoms, including but not limited to DECEDENT dry heaving earlier in the night.

28.    Defendant JOHNSON performed cell checks at approximately 1:57 a.m. when he noticed DECEDENT slumped over by the toilet, unresponsive and displaying an obvious life-threatening condition.

29.    Upon information and belief, Defendants YAUGER, YEAGER and others responded and went to the cell with Defendant JOHNSON. The two removed

the unresponsive DECEDENT from the cell. Yet any effort made by that time was far too late.

30.    After over ten minutes, at approximately 2:09 a.m., Defendant JOHNSON radioed for assistance and finally requested a full medical response. Some approximately thirty minutes after DECEDENT was found unresponsive in his cell, Rafael Fire Department Paramedic Uriel Guevara arrived and took over medical treatment, then pronounced the time of death as 2:42 a.m.

31.    Defendant DE LA CRUZ was a supervisor medical staff member at MCJ who know or should have known of DECEDENT'S medical and mental health condition, should have but failed to report his medical and mental health condition to all medical and custodial staff members assigned to the area so that they can be informed of DECEDENT'S condition and know specifically what types of signs and symptoms to look out for, and should have but failed to ensure that DECEDENT was protected, evaluated, cared for, and treated timely and adequately prior to his and in prevention of his death.

32.    While in custody, from about May 26-30, 2024, DECEDENT was in custody and under the protection and control of Defendants at MCJ.

33.    When an inmate shows signs and symptoms of a medical crisis, Custodial Deputies, Supervisors, and Medical Staff members have a responsibility to evaluate and treat the inmate.

34.    During the initial evaluation, medical staff must arrange for immediate and follow-up treatment as needed, recommend continuing observation logs for medical related issues, and recommend appropriate housing in a special management housing unit.

35.    Further, Defendants must notify supervisors, who in turn must disseminate the information to other relevant subordinates, of the medical needs of an inmate, such as DECEDENT, based on the information and recommendations received by medical providers. At MCJ, on-site medical services must be made

available to inmates for evaluations, crisis intervention, medication dispensation, and monitoring patient status. Further, a protocol must be in place for the immediate transfer of an inmate-patient suffering a serious illness or condition to which the on-site staff is ill-equipped to diagnose or treat.

36.    Given that medical records are kept separate from other inmate records, medical staff, including the medical Defendants, must advise the custodial staff, including the deputy and supervisor Defendants, of all information that would affect the inmate's welfare, security, or ability to participate in programs. Failure to adequately communicate the appropriate information is an intentional decision made in conscious disregard for the health, safety, care, and protection of an inmate.

37.    At MCJ, the intake procedure requires inmates to be interviewed and evaluated by both Deputy and Medical Staff. The COUNTY staff are also required to complete certain documentation including the intake medical screening form, and the inmate is to be examined by medical staff. Intake classification and medical screening is the process by which an inmate is properly assigned to a housing unit and to activities based on specific criteria designed to provide of the safety, protection, and care of the inmate.

38.    The criteria involved include the inmate's security level, immediate needs, criminal history, medical history, and social history. To evaluate these criteria, the COUNTY officials, including Defendants, must thoroughly evaluate and interview each inmate to gather the appropriate information and analyze that information based on the safety, protection, and care needs of the inmate. The information collected is documented and accessible to all COUNTY staff through the MCJ information system, and a copy is placed in the inmate's file.

39.    Upon information and belief, after approximately fourteen days in custody, each inmate must receive a medical examination by a qualified health care provider. This examination must include a complete review of the inmate's receiving screening information and medical history, and the inmate's health appraisal must

include behavioral health, vital signs, medical examination and review of behavioral status, initiation of therapy when appropriate, development and implementation of a treatment plan, including recommendations for housing and program participation, and referral to treatment.

40. By DECEDENT'S intake and classification process, Defendants had access to knowledge of DECEDENT's file to assess his relevant classification criteria including his safety and security needs. Thereafter, logs from cell checks and evaluations were and/or should have been placed in DECEDENT's file accessible to all staff and relevant information passed from outgoing to oncoming COUNTY agents.

41. Upon information and belief, Defendants failed to adequately evaluate DECEDENT, failed to adequately screen him for his medical condition, failed to treat his serious medical condition, failed to adequately initiate therapy, and failed to develop and implement an appropriate treatment plan.

42. Thereafter, Defendants failed to adequately monitor, evaluate, document, and treat DECEDENT for his known serious and life-threatening medical condition.

43. However, each and every individual Defendant showed deliberate indifference and a conscious disregard for the life, care, health and safety of DECEDENT by failing to perform their responsibilities as described herein which independently and/or in connection with other Defendant failures contributed the failure to protect and care for DECEDENT.

44. Every reasonable custodial official and medical provider would be subjectively aware under these circumstances, just as PLAINTIFF contends that Defendants were aware, that DECEDENT was incapable of caring for himself and incapable of calling for outside assistance for his care, safety, and protection, and that under the circumstances a lack of adequate monitoring, evaluation, and treatment would lead to a substantial risk of serious bodily injury or death.

45.    Defendants had a responsibility to continually monitor, evaluate, and treat DECEDENT; and to document, in detail, information pertaining to their evaluation and treatment of DECEDENT. This documentation is vital for continuity of care of a patient so that other medical staff can easily read and understand the inmate's current medical condition, history, treatment, and baseline, and use that information to properly evaluate and treat the patient, create an individualized treatment plan for the patient, and to communicate this information to the classification unit for proper inmate housing. Further, medical staff are required to advise the classification unit, and the custodial guards, of pertinent information that affects an inmate's welfare and security. Nevertheless, Defendants showed deliberate indifference and a conscious disregard for the life, care, health and safety of DECEDENT when they failed to continually monitor, evaluate and treat DECEDENT, failed to document in detail the signs and symptoms of his medical distress, failed to create and implement an adequate treatment program, and perform their responsibilities as described herein.

46.    Defendants had a responsibility to conduct regular direct visual observation of DECEDENT to assess his safety, well-being, condition, medical distress, and symptoms, and to document their observations and communication in detail so that the information can be used to provide the inmates with protection, accommodation, to summon medical care, and to pass pertinent information to Defendants classification and medical staff for their continued treatment, care, and protection of DECEDENT. Further, Defendants received training regarding timely response to health-related situations; recognizing signs, symptoms, and knowledge of action required in potential emergency situations; methods of obtaining assistance; recognizing the signs, and symptoms of illness and distress; and procedures for patient transfers to appropriate medical facility or care providers. Nevertheless, Defendants showed deliberate indifference and a conscious disregard for the life, care, health, and

safety of DECEDENT when they failed to perform their responsibilities as described herein.

47.    Upon information and belief, Defendants subjectively knew that DECEDENT was experiencing a medical crisis. Nevertheless, on or around the evening of his death, Defendants made the intentional decisions with respect to DECEDENT's condition of confinement, and/or allowed the decision to be made knowing the risks involved, by effectively ignoring DECEDENT and failing to provide adequate protection, supervision, or care. By Defendants actions and omissions, they put DECEDENT at a substantial risk of serious bodily injury or death and failed to accommodate him, and caused his long-lasting pre-death pain and suffering, loss of enjoyment of life, and loss of life. Defendants further caused PLAINTIFF to suffer the lifelong loss of her son.

48.    Upon information and belief, Defendants were responsible for monitoring the cameras within B-Pod and the intercom system for communicating with inmates in their cells. Yet Defendants choose to ignore the inmates, including DECEDENT.

49.    On or around October 15, 2024, PLAINTIFF served her comprehensive claim against the County of Marin pursuant to the applicable Government Code.

50.    Defendant COUNTY rejected Plaintiff's claim on November 26, 2024.

## **DAMAGES**

51.    As a direct and proximate result of the deliberate indifference and wrongful conduct of all Defendants, PLAINTIFF has suffered and continues to suffer the lifelong loss of her son, resulting in PLAINTIFF'S economic and non-economic damage in amounts to be proven at the time of trial.

52.    As a direct and proximate result of the deliberate indifference and wrongful conduct of all Defendants, DECEDENT endured severe pain and suffering, loss of life, and loss of opportunity and enjoyment of life.

53.    Pursuant to 42 U.S.C. §1988(b), PLAINTIFF is entitled to recover reasonable attorney fees incurred herein.

**FIRST CLAIM FOR RELIEF**

**Interference with Familial Relationship, Due Process – Violation of the**

**Fourteenth Amendment (42 U.S.C. §1983)**

(Wrongful Death) (By Plaintiff against Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1 through 10)

54.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 53 of this Complaint with the same force and effect as if fully set forth herein.

55.    At all relevant times Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 acted under the color of state law and within the course and scope of their employment.

56.    A parent, such as PLAINTIFF, has a fundamental liberty interest in the companionship and society of her child and the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. §1983. *See Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001); *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985).

57.    PLAINTIFF had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in PLAINTIFF'S relationship with her son, DECEDENT.

58.    By engaging in the conduct alleged herein, Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 deprived Plaintiff of her right to a familial relationship with her son, DECEDENT, including by failing to properly evaluate DECEDENT, by failing to house DECEDENT appropriately, by failing to adequately provide medical treatment to DECEDENT, by failing to adequately

COMPLAINT FOR DAMAGES

monitor cells and inmates' well-being at MCJ, by failing to protect DECEDENT, and by failing to promptly provide adequate medical care to DECEDENT, and conduct that together resulted in DECEDENT's death. This conduct violated DECEDENT's and PLAINTIFF'S rights, privileges, and immunities secured by the Fourteenth Amendments to the United States Constitution.

59. By engaging in the foregoing conduct, Defendants were integral participants and acted with deliberate indifference to the constitutional rights of PLAINTIFF, and with the purpose to harm unrelated to any legitimate law enforcement objective. Defendants are liable to PLAINTIFF for the interference with her familial relationship.

60. As a result of their misconduct, Defendants are liable to PLAINTIFF, either because they were integral participants in the deliberate indifference to PLAINTIFF'S rights, or because they failed to intervene to prevent the denial of PLAINTIFF'S rights.

61. As a direct and proximate result of the wrongful conduct of Defendants, DECEDENT suffered emotional distress, mental anguish, pain and death. PLAINTIFF has also been deprived of the lifelong love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

62. The conduct of Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 was malicious, oppressive and in reckless disregard for the rights of PLAINTIFF and warrants the imposition of exemplary and punitive damages against said Defendants.

63. PLAINTIFF brings this claim individually and seeks wrongful death damages under this claim for her past and future loss of DECEDENT's love, companionship, comfort, care, assistance, attention, protection, affection, society, moral support, instruction, training, advice, guidance, gifts or benefits, funeral and burial expenses, household services, future financial support, and punitive damages.

64.     Plaintiff also seeks costs and attorney's fees under this claim pursuant to 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF

**Failure to Protect / Denial of Medical Care – Violation of the Fourteenth Amendment (42 U.S.C. §1983)**

(Survival Action) (By Plaintiff against Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10)

65.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-64 of this Complaint with the same force and effect as if fully set forth herein.

66.     At all relevant times Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 acted under the color of state law and within the course and scope of their employment.

67.     The Fourteenth Amendment to the United States Constitution guarantees all persons the right adequate medical care while in custody and to protection, and 42 U.S.C. §1983 provides a private right of action to challenge conduct which violates this right.

68.     The treatment a person receives in custody and the conditions under which he is confined are subject to scrutiny under the Fourteenth Amendment. Minimally, officials are required to take reasonable measures to guarantee the safety of those in their custody. Thus, officials, including Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10, had and have a duty to protect persons in custody, including DECEDENT, provide them with adequate medical care and treatment, which also means proper cell checks, monitoring, evaluation of DECEDENT, including taking DECEDENT to the appropriate medical facilities for diagnosis and treatment, and such officials may be held liable if they are deliberately indifferent in their duty to protect inmates including DECEDENT as is the case here. In other words, Defendants YAUGER, JOHNSON, YEAGER, DE LA

1  CRUZ, and DOES 1-10 are liable because they knew that DECEDENT faced a

2  substantial risk of serious harm and disregarded that risk by failing to take reasonable

3  measures to abate it.

4        69.    Pursuant to their duty to protect prisoners and provide reasonable medical

5  treatment, Defendants are required to take reasonable precautions to monitor,

6  evaluate, and care for inmates. Additionally, Defendants were and are required to

7  supervise, monitor, protect, and intervene in order to a serious medical condition from

8  exacerbating into a deadly threat, such as with DECEDENT, and prevent harm and

9  death of an inmate.

10       70.    The substantial and foreseeable risk of serious harm posed to

11 DECEDENT by his serious medical condition under the circumstances alleged herein

12 was known and obvious. Defendants knew that DECEDENT was suffering a medical

13 crisis, Defendants knew about DECEDENT'S cry for help, Defendants knew that

14 DECEDENT was vomiting and dry heaving, and Defendants knew that failure to treat

15 his symptoms and respond to his cry in order to evaluate, diagnose, and treat

16 DECEDENT, would cause physical injury and possibly death to DECEDENT.

17       71.    Each Defendant deprived DECEDENT of his civil rights under the

18 Eighth Amendment to the United States Constitution when they subjected him to cruel

19 and unusual punishment by failing to protect him and failing to provide him with

20 adequate medical care and acted with deliberate indifference to DECEDENT'S rights,

21 including failing to monitor, evaluate, and report an objectively and obviously ill

22 inmate, based on his medical condition, in a Pod without adequate monitoring, and in

23 a cell without a working call button; failing to provide DECEDENT with adequate

24 medical treatment; failing to properly screen DECEDENT prior to his classification;

25 failing to perform proper checks, monitoring, surveillance, and supervision of the

26 detention cells, including as alleged herein; failure to protect DECEDENT considering

27 the medical risks posed to DECEDENT from his apparent illness; failure to intervene

28 and protect DECEDENT from his apparent illness; failure to provide timely medical

care to DECEDENT; and failure to timely summon appropriate medical care for DECEDENT.

72.    Upon information and belief, Defendants' failure to provide adequate medical care, and failure to supervise, as alleged herein, contributed to his medical condition and symptoms, and substantially contributed to his ultimate death. Thus, Defendants' inadequate medical care and supervision was a cause of and created the dangerous situation whereby DECEDENT died in Defendants custody and control.

73.    Defendants' actions and inactions were also in reckless disregard of the substantial risk of serious harm to DECEDENT. Defendants YAUGER and JOHNSON were COUNTY custodial officials and Defendants YEAGER and DE LA CRUZ were COUNTY medical officials who deliberately chose to house, classify, and position DECEDENT thereby creating a dangerous condition. Then Defendants responsible for monitoring DECEDENT to ensure his safety, care, and protection, failed to monitor him electronically by video or intercom, visually, auditorily, and by appropriate cell checks allowing DECEDENT'S condition to exacerbate and go ignored, for approximately two days until DECEDENT'S death without intervention. Defendant Supervisors had the responsibility to oversee the proper classification and protection of inmates by their subordinates yet knowingly contributed to or failed to intervene in the improper classification, care, monitoring, treatment, and protection of DECEDENT. Defendants were all COUNTY officials responsible for the proper medical monitoring of DECEDENT, yet failed to adequately monitor and treat DECEDENT and failed to recommend accommodation and care for DECEDENT that would protect him from the known risk of his condition.

74.    As a direct and proximate result of Defendants' foregoing actions and inactions, DECEDENT suffered great physical pain and emotional distress up to the time of his death, and then suffered loss of enjoyment of life, loss of life, loss of opportunity of life, and loss of earning capacity. Defendants' actions resulted in the

unnecessary and wanton infliction of pain, and Defendants' state of mind relative to DECEDENT was one of deliberate indifference to DECEDENT'S safety.

75.    As a result of their misconduct, Defendants are liable to DECEDENT, either because they were integral participants in the deliberate indifference to DECEDENT'S rights, or because they failed to intervene to prevent the denial of DECEDENT'S rights.

76.    The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT LEEDS and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

77.    PLAINTIFF brings this claim as successor in interest to DECEDENT and seeks compensatory survival damages for his pre-death pain and suffering, loss of enjoyment and opportunity for life, and loss of life, and for punitive damages.

78.    PLAINTIFF also seeks attorneys' fees pursuant to 42 U.S.C. §1988 and costs of suit.

**THIRD CLAIM FOR RELIEF**

**Supervisor Liability (42 U.S.C. § 1983)**

(Survival Action) (By Plaintiff against Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and Supervisor DOES)

79.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-78 of this Complaint with the same force and effect as if fully set forth herein.

80.    "A supervisory official is liable under §1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (citation and internal quotation marks omitted). "[A] supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or

for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (citation and internal quotation marks omitted).

81.    On information and belief, Defendants Supervisor DOES were present at MCJ during the intake, evaluation, classification, housing, and lack of treatment of DECEDENT, and/or were aware of the above while it was ongoing and had knowledge of the involved deputies and medical staff's — the subordinates — conduct, as alleged above, including failing to timely intervene and attend to DECEDENT'S injuries.

82.    By observing these failures and nonetheless failing to direct the involved deputies and medical staff to intervene to protect DECEDENT and timely provide him with medical assistance and protection, Defendants Supervisor DOES acquiesced in the constitutional deprivations DECEDENT suffered as a result of the involved Deputies and medical staff's acts and omissions. As a result of this acquiescence, Defendants Supervisor DOES are liable as supervisors for the same violations under §1983.

83.    Upon information and belief, Defendants Supervisor DOES also oversaw, directed, and supervised MCJ's inmate intake, screening, classification, and housing process at all relevant times.

84.    MCJ officials failed to adequately screen, classify, and house, and failed to create an adequate policy to screen, classify, and house DECEDENT upon their arrival to MCJ, including by: performing inadequate medical examinations of DECEDENT; failing to communicate their condition, signs, and symptoms between custodial and medical staff; failing to provide persons in custody with adequate medical care; and failing to provide the proper treatment and monitoring plan.

85.    As a result of their inadequate policies, procedures, and training, these COUNTY officials improperly monitor, evaluate, and care for DECEDENT, knowing DECEDENT had apparent serious medical issues, should not have placed DECEDENT in B-Pod, especially without adequate supervision and monitoring. This

improper classification decision was also a result of MCJ officials' deliberate indifference to the health and safety of DECEDENT.

86.    Defendants Supervisor DOES' knowing failure to ensure that proper screening procedures were used, and to ensure that the involved deputies and medical staff intervened to treat DECEDENT and timely provided him medical aid, was a cause of DECEDENT'S pain, suffering, and death.

87.    As a direct result of the aforesaid acts and omissions of Defendants Supervisor DOES, DECEDENT LEEDS suffered great physical and mental injury, fear, and emotional distress leading to his death, the loss of enjoyment of life, loss of opportunity of life, and loss of his life.

88.    The conduct of Defendants Supervisor DOES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and warrants the imposition of exemplary damages in an amount according to proof.

89.    As a result of their misconduct, Defendants Supervisor DOES are liable to DECEDENT through PLAINTIFF.

90.    PLAINTIFF brings this claim as successor in interest to DECEDENT and seeks compensatory survival damages for his pre-death pain and suffering, loss of enjoyment and opportunity for life, and loss of life, and for punitive damages.

91.    PLAINTIFF also seeks attorneys' fees pursuant to 42 U.S.C. §1988 and costs of suit.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. §1983)

(By Plaintiff against Defendant COUNTY)

92.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-91 of this Complaint with the same force and effect as if fully set forth herein.

93.    Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 were acting under color of state law and in the course and scope of their

employment as deputies, sergeants, officers, managers, supervisors, policymaking employees, contractors, nurses, and/or doctors for the COUNTY and/or MCJ in its capacity as contractor to the COUNTY.

94.    The acts of Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 deprived DECEDENT of his rights under the United States Constitution as alleged above.

95.    On information and belief, Defendant COUNTY failed to properly and adequately train Defendants on issues including, but not limited to: intake and screening for inmates suffering from serious medical illness; the housing and cell accommodations of persons suffering from a serious medical illness; proper evaluation, treatment, and communication of symptoms between custodial officials including Defendants; adequate monitoring and supervision of inmates and cell conditions in MCJ; recognizing the signs and symptoms of a serious and potentially life-threatening medical condition; when to take persons suffering a serious medical condition to the hospital or proper monitoring, care, diagnosis, and treatment; promptly responding to incidents of medical crisis within MCJ to intervene and protect inmates; and providing and summoning medical assistance for inmates who are in medical crisis.

96.    On information and belief, Defendant COUNTY provides inadequate training to employees and contractors tasked with admitting and screening new inmates before they are assigned housing in MCJ. This includes adequately training employees and contractors to perform medical evaluations and treatment designed to identify and manage medical illnesses that are likely to render inmates particularly vulnerable to death or are likely to render them more susceptible to harm or injury – as opposed to creating conditions of confinement that exacerbate the harm, injury, and likelihood of death.

97.    The training policies of Defendant COUNTY were not adequate to train its employees to handle the usual and recurring situations with which they must deal,

including screening inmates who suffer from medical illnesses, responding to intervene in incidents of medical crisis, providing or summoning medical care when inmates are injured through a serious medical condition, recognizing a serious medical condition by subjective and objective signs and symptoms, and transporting the inmate to the proper facilities for diagnosis, care, and treatment.

98.    Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its employees adequately including because after the numerous incidents of inadequate care complained of by inmates, being informed by news and several lawsuits, and being informed and acknowledged by COUNTY officials, Defendant COUNTY failed to take adequate steps to change and/or improve its training, and failed to retrain employees and contractors to ensure training skills and knowledge do not perish.

99.    As a direct and proximate result of Defendant COUNTY'S failure to train its employees, DECEDENT was caused to suffer harm, injury, and/or death. In other words, the failure of Defendant COUNTY to provide adequate training caused the deprivation of DECEDENT'S rights by Defendants, such that the Defendant COUNTY'S failure to train is the moving force of the injuries and constitutional violations DECEDENT suffered.

100.    As predicated on PLAINTIFF'S First through Third Claims for Relief, PLAINTIFF brings this claim individually and seeks wrongful death damages under this claim for her past and future loss of DECEDENT'S love, companionship, comfort, care, assistance, attention, protection, affection, society, moral support, instruction, training, advice, guidance, gifts or benefits, funeral and burial expenses, household services, and future financial support, and punitive damages. PLAINTIFF also brings this claim as successor in interest to DECEDENT and seeks compensatory survival damages for his pre-death pain and suffering, loss of enjoyment and opportunity for life, and loss of life, and for punitive damages.

1    101.   PLAINTIFF also seeks costs and attorney's fees under this claim

2   pursuant to 42 U.S.C. §1988.

3

4                          **FIFTH CLAIM FOR RELIEF**

5            **Municipal Liability – Ratification (42 U.S.C. §1983)**

6                   (By Plaintiff against Defendant COUNTY)

7    102.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-

8   101 of this Complaint with the same force and effect as if fully set forth herein.

9    103.   Defendants were acting under color of state law and in the course and

10   scope of their employment as deputies, sergeants, officers, managers, supervisors,

11   policymaking employees, nurses, and/or doctors for the COUNTY and/or MCJ.

12    104.   The acts of Defendants deprived DECEDENT and PLAINTIFF of their

13   rights under the United States Constitution including as alleged herein.

14    105.   Upon information and belief, a COUNTY final policymaker, acting

15   under color of law, who had final policymaking authority, ratified the acts of

16   Defendants and the bases for them. Upon information and belief, the final

17   policymaker knew of and specifically approved of Defendants' conduct, finding them

18   to be within COUNTY policy.

19    106.   Because of the acts and omissions of which the COUNTY final

20   policymaker approved, DECEDENT suffered pain and suffering, loss of enjoyment of

21   life, and loss of life; and PLAINTIFF suffered and continues to suffer the lifelong loss

22   of her son.

23    107.   Accordingly, Defendant COUNTY is liable to PLAINTIFF for

24   compensatory damages under 42 U.S.C. §1983.

25    108.   As predicated on PLAINTIFF'S First through Third Claims for Relief,

26   PLAINTIFF brings this claim individually and seeks wrongful death damages under

27   this claim for her past and future loss of DECEDENT'S love, companionship,

28   comfort, care, assistance, attention, protection, affection, society, moral support,

instruction, training, advice, guidance, gifts or benefits, funeral and burial expenses, household services, and future financial support, and punitive damages. PLAINTIFF also brings this claim as successor in interest to DECEDENT and seeks compensatory survival damages for his pre-death pain and suffering, loss of enjoyment and opportunity for life, and loss of life, and for punitive damages.

109.   PLAINTIFF also seeks attorneys' fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom, Practice, Policy (42 U.S.C. §1983)

(By Plaintiff against Defendant COUNTY)

110.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-109 of this Complaint with the same force and effect as if fully set forth herein.

111.   Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 were acting under color of state law and in the course and scope of their employment as deputies, sergeants, officers, managers, supervisors, policymaking employees, contractors, nurses, and/or doctors for the COUNTY and/or MCJ.

112.   The acts of Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 deprived DECEDENT of his rights under the United States Constitution including as alleged herein.

113.   Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 acted pursuant to an expressly adopted official policy or longstanding practice or custom of Defendant COUNTY.

114.   Upon information and belief, Defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the deprivation of DECEDENT'S rights.

115.   Defendants together with other COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

a)      Maintaining improper and/or inadequate screening, classification, and housing procedures and processes for appropriate housing assignments.

b)      Failing to screen and assess inmates for appropriate housing placements, based on inmates' medical and/or physical health needs properly and adequately, and COUNTY officials tolerating the same.

c)      Failing to conduct or conducting inadequate or untimely cell checks, and COUNTY officials tolerating the same.

d)      Failing to protect inmates and failing to monitor inmates who have known medical conditions, and COUNTY officials tolerating the same.

e)      Failing to provide adequate medical care to inmates with serious medical needs, and COUNTY officials tolerating the same.

f)      Maintaining a constitutionally inadequate medical treatment program that fails to provide adequate treatment planning, and programming, and COUNTY officials tolerating the same.

g)      Denying inmates with medical disabilities access to services, programs, and activities because of their disabilities, and COUNTY officials tolerating the same.

h)      Failing to train officials with respect to proper housing and treatment of individuals with medical illnesses, and COUNTY officials tolerating the same.

i)      Failing to train officials to identify the indications of persons with serious medical issues and the exacerbation of those symptoms due to the inappropriate conditions of confinement, and COUNTY officials tolerating the same.

j)      Failing to train officials in the appropriate circumstances and time to share information with staff and transport an inmate to the hospital.

k)      Maintaining a policy of inaction and indifference towards the safety of inmates in their care and custody.

l)      Maintaining a policy to withhold in-custody death reporting documentation from the public.

m)      Employing and retaining officials including Defendants who fail to follow COUNTY policy, fail to provide adequate protection of person in custody, fail to provide adequate medical attention to persons in custody, and fail to supervise and train subordinates on proper custodial procedures.

n)      Maintaining an inadequate procedure of reporting, supervising, disciplining, and controlling misconduct of both inmates and officials, and COUNTY officials tolerating the same.

o)      Ratifying misconduct and unconstitutional practices of officials.

p)      Failing to discipline officials for conduct that is in violation of COUNTY policy and constitutes violation of constitutional rights.

116.    Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein. Despite having knowledge as stated above, Defendant COUNTY condoned, tolerated and through actions and inactions thereby ratified such policies. Defendant COUNTY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT and other individuals similarly situated.

117.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant COUNTY acted with intentional, reckless, and callous disregard for PLAINTIFF'S and DECEDENT'S Constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by Defendant COUNTY were affirmatively linked to and were a significantly influential force behind PLAINTIFF and DECEDENT'S harm, injuries, and/or death.

118.    By reason of the aforementioned acts and omissions, PLAINTIFF has suffered loss of love, companionship, affection, comfort, care, society, training,

guidance, and past and future support of DECEDENT, and DECEDENT endured substantial pain and suffering, loss of enjoyment of life, and death.

119.   Accordingly, Defendant COUNTY is liable for compensatory damages under 42 U.S.C. §1983.

120.   As predicated on PLAINTIFF'S First through Third Claims for Relief, PLAINTIFF brings this claim individually and seeks wrongful death damages under this claim for her past and future loss of DECEDENT's love, companionship, comfort, care, assistance, attention, protection, affection, society, moral support, instruction, training, advice, guidance, gifts or benefits, funeral and burial expenses, household services, and future financial support, and punitive damages. Further, PLAINTIFF also brings this claim as successor in interest to DECEDENT and seeks compensatory survival damages for his pre-death pain and suffering, loss of enjoyment and opportunity for life, and loss of life, and for punitive damages.

121.   Plaintiff also seeks attorneys' fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

### Americans with Disabilities Act – Reasonable Accommodation

#### (Survival) (By Plaintiff against Defendant COUNTY)

122.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-121 of this Complaint with the same force and effect as if fully set forth herein, except for any and all allegations of intentional, malicious, extreme, outrageous, wonton, and oppressive conduct by individual Defendants, and any and all requests for punitive damages.

123.   Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a

public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Accordingly, the "ADA is intended to ensure that qualified individuals receive services in a manner consistent with basic human dignity rather than a manner which shunts them aside, hides, and ignores them." *Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995).

124.    The COUNTY is aware that one form of discrimination prohibited by Title II of the ADA is violation of the "integration mandate." *See* 28 C.F.R. §35.130(d) (2019); *see also* 42 U.S.C. §12101(a)(2), (b)(1). That is, under the ADA, public entities must "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. §35.130(d). An integrated setting is one that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. pt. 35, App. B, at 708 (2018). Further, in *Olmstead v. L.C.*, the Supreme Court held that public entities are required to provide community-based services to persons with disabilities when (a) such services are appropriate; (b) the affected persons do not oppose community-based treatment; and (c) community-based services can be reasonably accommodated, considering the resources available to the entity and the needs of other persons with disabilities. 527 U.S. 581, 607 (1999). In so holding, the Court explained that unnecessary institutional placement "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life." *Id.* at 600. As the Tenth Circuit reasoned, the integration mandate "would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation." *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003).

125.    The Act defines "'public entity'" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," §12131(1), which includes state prisons and local/municipal jails.

126.   Under the ADA, a person has a disability if they have physical or medical impairment that substantially limits one or more of their major life activities, there is a record of that impairment, or they are regarded as having that impairment. 42 U.S.C. §12202(2).

127.   The DECEDENT suffered from qualifying medical disability that impaired major life activities. Upon information and belief, Defendant COUNTY through its officials knew and documented DECEDENT'S qualifying medical disabilities. These known medical impairments substantially limited his major life activities.

128.   A person is a qualified individual under the Act if they have a disability, were excluded from participation, or denied the benefits of a public entity's services, programs, or activities; or was otherwise discriminated against by the public entity, and this exclusion, denial, or discrimination was by reason of their disability.

129.   Defendant COUNTY officials as described herein, intentionally, deliberately, and purposefully placed DECEDENT in B-Pod with inadequate treatment programs despite his medical disability.

130.   Specific programs are available to other inmate populations at MCJ and specifically made unavailable or had inadequately limited availability to DECEDENT in B-Pod, including working in-cell audio communication accommodation, proper cell checks, monitoring, and medical care.

131.   Upon information and belief, inmates with serious medical illness such as and including DECEDENT are among those with the greatest need for the care, benefits, services, and programs mentioned herein but are denied access to the necessary care, benefits, services, and programs because of their disability.

132.   In other words, Defendant COUNTY specifically denied inmates access to programs and treatment specifically because of their medical health disabilities.

133.   The Act requires that the public entity maintain and make reasonable modifications in policies, practices, or procedures to avoid discrimination based on

disability, unless such modifications would fundamentally alter the nature of the service, program, or activity.

134.    Defendant COUNTY is required to provide individuals in its custody with safe, appropriate housing and implement a "tracking system" to enable the facility to comply with The Act. Defendant COUNTY failed to do so when it allowed DECEDENT to be placed in B-Pod with inadequate care as described herein.

135.    PLAINTIFF alleges as a claim for relief that the Defendant COUNTY, in violation of the ADA, failed to provide DECEDENT with reasonable accommodation to his known qualifying disability in their interactions with DECEDENT as alleged herein including by its failure to provide adequate medical care to DECEDENT both before, during and after his medical condition exacerbated into a deadly threat.

136.    Further, Defendant COUNTY failed to provide benefits, programs, and activities necessary for DECEDENT'S medical treatment such as a private location and therapeutic environment to conduct medical evaluation and treatment, along with the time and personnel to allow for adequate evaluation and treatment, so that DECEDENT'S and other inmates' serious medical symptoms are not exacerbated.

137.    As providers of governmental services, Defendant COUNTY had a duty to comply with Title II of the ADA prohibiting discrimination against persons with disabilities, a history of having disabilities or who are perceived to have a disability. As of the date of the incident, DECEDENT met all three prongs of eligibility for application of the ADA.

138.    As a direct and proximate result of the Defendants' violation of the ADA as set forth above, DECEDENT incurred substantial emotional and physical harm. DECEDENT suffered substantial and severe pain and injury as the proximate result of the Defendant COUNTY'S conduct in violation of the ADA as set forth herein.

139.    Accordingly, Defendant COUNTY is liable to PLAINTIFF for punitive and compensatory damages and reasonable attorneys' fees pursuant to 42 U.S.C. §§1988 and 12205, and costs of suit.

### EIGHTH CLAIM FOR RELIEF

**Negligence**

(Wrongful Death and Survival) (By Plaintiff against Defendants YAUGER,
JOHNSON, YEAGER, DELA CRUZ, and DOES 1-10 directly, and Defendant
COUNTY vicariously)

140.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-139 of this Complaint with the same force and effect as if fully set forth herein.

141.   Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 have a duty to use reasonable care to prevent harm or injury to inmates in their care and custody. This duty includes instituting proper screening processes to assess appropriate housing placements, preventing medical emergencies, and providing prompt and adequate medical care. Supervisory Defendants had an obligation, duty, or responsibility to train and supervise subordinates.

142.   Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 breached this duty of care. The actions and inactions of Defendants were negligent and reckless, including but not limited to:

      a)     The failure to screen and assess inmates for appropriate housing placements properly and adequately.

      b)     Failure to intervene and protect DECEDENT.

      c)     Failing to perform proper and timely cell checks.

      d)     The failure to immediately summon medical care for DECEDENT without delay.

      e)     The failure to properly train and supervise Defendant DOES 1-10 including with respect to proper housing and treatment of individuals.

      f)     The failure to train officials to identify the indications of persons with serious medical issues.

      g)     The failure to train officials to properly communicate the existence of medical issues of certain inmates.

h)     The failure to train officials to identify the indications of persons with serious medical issues and the exacerbation of those symptoms due to the inappropriate conditions of confinement, and COUNTY officials tolerating the same.

i)     The failure to train officials in the appropriate circumstances and time to share information with staff, and transport an inmate to the hospital.

j)     The failure to ensure that adequate numbers of officials with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT.

k)     The failure to protect DECEDENT from harm, including from his cellmate, as well as the negligent failure to appropriately house inmates in a manner to protect them from harm.

l)     Failure to follow COUNTY policy and basic training.

143.   As a direct and proximate result of Defendant's conduct as alleged above, and other undiscovered negligent conduct, DECEDENT sustained injuries and died from his injuries. Also, as a direct and proximate result of Defendants' conduct as alleged above, PLAINTIFF has also been deprived of her life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

144.   Pursuant to Cal. Gov't Code §820(a), "a public employee is liable for injury caused by his act or omission to the same extent as a private person."

145.   "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code §815.2(a). Defendant COUNTY is vicariously liable under California law and the doctrine of *respondeat superior*.

146.   Pursuant to Cal. Code. of Civ. Pro. §§377.20, 377.30, 377.34,

PLAINTIFF brings this survival action for compensation of DECEDENT'S pre-death pain and suffering, and disfigurement, and for punitive damages.

147.  Pursuant to Cal. Code. of Civ. Pro. §§377.60, 377.61, PLAINTIFF brings this wrongful death action for compensation for her past and future loss of DECEDENT'S love, companionship, comfort, care, assistance, attention, protection, affection, society, moral support, instruction, training, advice, guidance, gifts or benefits, funeral and burial expenses, household services, and future financial support.

148.  Plaintiff seeks attorneys' fees under this claim pursuant to Cal. Code of Civ. Pro. §1021.5 for enforcement of the important rights effecting the public interest that Plaintiff, DECEDENT, and those similarly situated have to a right to familial relationship without unreasonable interference, the right to protection while in custody, the right to adequate medical care while in custody.

## NINTH CLAIM FOR RELIEF

### Failure to Summon Medical Care (Cal. Govt. Code §845.6)

(Wrongful Death and Survival) (By Plaintiff against Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 directly, and Defendant COUNTY vicariously)

149.  Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-148 of this Complaint with the same force and effect as if fully set forth herein.

150.  Defendants YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10 have a duty to use reasonable care to prevent harm or injury to inmates in their care and custody by timely summoning medical care during a medical emergency. This duty includes instituting proper screening, monitoring, evaluating, and providing prompt and adequate medical care.

151.  Defendants failed to provide medical care to DECEDENT during an apparent and known medical emergency, failed to properly screen, monitor, evaluate, and provide prompt and adequate medical care to DECEDENT. And Defendants

failed to timely call for medical care when obviously required.

152. As a direct and proximate result of Defendant's conduct as alleged herein, DECEDENT sustained injuries and eventually died from those injuries. Also, as a direct and proximate result of Defendants' conduct as alleged herein, PLAINTIFF has been deprived of her life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

153. Pursuant to Cal. Gov't Code §820(a), "a public employee is liable for injury caused by his act or omission to the same extent as a private person."

154. "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code §815.2(a). Defendant COUNTY is vicariously liable under California law and the doctrine of *respondeat superior*.

155. Pursuant to Cal. Code. of Civ. Pro. §§377.20, 377.30, 377.34, PLAINTIFF brings this survival action for compensation of DECEDENT's pre-death pain and suffering, and disfigurement, and for punitive damages.

156. Pursuant to Cal. Code. of Civ. Pro. §§377.60, 377.61, PLAINTIFF brings this wrongful death action for compensation for her past and future loss of DECEDENT'S love, companionship, comfort, care, assistance, attention, protection, affection, society, moral support, instruction, training, advice, guidance, gifts or benefits, funeral and burial expenses, household services, and future financial support.

/ / /

/ / /

## TENTH CLAIM FOR RELIEF

### Violation of the Bane Act (Cal. Civil Code §52.1)

(By Plaintiff against Defendants)

157.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-156 of this Complaint with the same force and effect as if fully set forth herein.

158.    The Bane Act, California Civil Code §52.1(b), "provides a cause of action for violations of a plaintiff's state or federal civil rights." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code §52.1). Although those violations must also be "committed by 'threat[ ], intimidation, or coercion,'" *id.*, unlike §1983, the "threat, intimidation, or coercion" need not "be independent from the constitutional violation alleged." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (1st Dist. 2017)).

159.    The Bane Act also requires that a plaintiff show that defendant officials "had a specific intent to violate" the state or federal right at issue. *Cornell*, 17 Cal. App. 5th at 801-02. This may be shown simply by demonstrating that the officer "acted…'in reckless disregard of constitutional or statutory prohibitions or guarantees.'" *See id.* at 803-04 (quoting *People v. Lashley*, 1 Cal. App. 4th 938, 948-49 (2d Dist. 1991)); *Reese*, 888 F.3d at 1045 ("[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights") (*quoting United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

160.    As described above, Defendants violated PLAINTIFF'S and DECEDENT'S constitutional rights by failing to protect DECEDENT and failure to timely provide medical care to DECEDENT, and by failing to properly screen and classify DECEDENT to prevent DECEDENT'S death under these circumstances.

161.    As described above, Defendants' acts and omissions leading to these deprivations were done with reckless disregard for DECEDENT'S safety and well-being, and thus with reckless disregard for his and PLAINTIFF'S constitutional

rights. Under controlling precedent, this reckless disregard for DECEDENT's and Plaintiff's constitutional rights demonstrates Defendants' specific intent to deprive DECEDENT and PLAINTIFF of those rights.

162.   As a result of Defendants' foregoing actions and inactions, DECEDENT suffered great physical pain and emotional distress up to the time of his death, and then suffered loss of enjoyment of life, and loss of life. The conduct of Defendants was a substantial factor in causing the harm, injuries, and death of DECEDENT.

163.   Defendant COUNTY is vicariously liable for the wrongful acts of the individual Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

164.   The conduct of the individual Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of PLAINTIFF and DECEDENT in that their constitutional rights were intentionally deprived and violated, and/or there was reckless disregard for constitutional rights of PLAINTIFF and DECEDENT. As such, the aforementioned conduct entitles PLAINTIFF an award of exemplary and punitive damages.

165.   Plaintiff seeks compensatory damages as allowed by law for the harm and loss suffered by both Plaintiff and DECEDENT, for civil penalty, punitive damages, costs, and attorney's fees, including treble damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JANET LEEDS requests entry of judgment in her favor and against Defendants COUNTY, YAUGER, JOHNSON, YEAGER, DE LA CRUZ, and DOES 1-10, inclusive, as follows:

A.    For general and special compensatory damages under federal and state law in an amount to be proven at trial.

B.    For punitive damages against each individual Defendant in an amount to be proven at trial.

C.    For interest.

D.    For reasonable costs of this suit and attorneys' fees under state and federal law, including treble damages.

E.    For such further relief at law or equity as the Court or jury may deem just and appropriate.

DATED:  May 16, 2025          **LAW OFFICES OF DALE K. GALIPO**

By:   */s/    Marcel F. Sincich*
Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiff*

1

## **DEMAND FOR JURY TRIAL**

2       Plaintiff JANET LEEDS hereby demands a trial by jury.

3

4   DATED:  May 16, 2025          **LAW OFFICES OF DALE K. GALIPO**

5

6                                      By:     /s/     *Marcel F. Sincich*

7                                              Dale K. Galipo
                                               Marcel F. Sincich
8                                              *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES